UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JESSIE RILEY                                      CIVIL ACTION

VERSUS                                           NUMBER 07-115-JVP-DLD

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY

REPORT AND RECOMMENDATION

Plaintiff Jessie Riley seeks judicial review of a final decision of the Commissioner of

the Social Security Administration (the "Commissioner") amending a prior fully favorable

decision which changed his disability onset date from January 1, 1978, to May 1, 2000.

*Background*

Plaintiff applied for social security income benefits ("SSI") in 1985, 1987, 1992, 1994,

and 1995.  All of these applications were denied, and plaintiff filed another application for

SSI on May 1, 2000.  After a hearing on July 31, 2001, the ALJ issued a fully favorable

decision, finding plaintiff disabled as of January 1, 1978.  At the time of the hearing in 2001,

plaintiff was 56 years old with a ninth grade education.  According to the Regulations,

plaintiff was therefore of advanced age with a limited educational level.  Moreover, as

plaintiff had not worked in the fifteen years preceding the hearing, he had no past relevant

work experience.  (TR 29)

The ALJ reached his initial fully favorable decision at step two of the sequential

evaluation process, finding that the medical evidence established that the plaintiff's

combination of impairments imposed "more than minimal adverse work-related limitations

so as to constitute a severe impairment." (TR 30) Specifically, the ALJ found that the

plaintiff had impairments of back pain, impingement syndrome, chronic pain syndrome with significant psychological overlay, hypertension, and functioning in the mild mental retardation range.  Because the plaintiff had no past relevant work experience, the ALJ relied upon the Medical-Vocational Guidelines, Rule 202.04 of Table No. 2, Appendix 2, Subpart P, Regulations No. 4, and noted that plaintiff's non-exertional limitations further reduced plaintiff's ability to make occupational adjustments.  The ALJ's decision indicates that a vocational examiner appeared at the July 2001 hearing, but the record is devoid of a transcript of that hearing.[1]  Regardless, the VE apparently testified that no other jobs existed for plaintiff given the hypothetical presented.

Thereafter, in or about June 2005, the Social Security Administration remanded the matter to the ALJ to review the 2002 decision for plaintiff's possible entitlement to disability insurance benefits ("DIB") in addition to SSI as DIB was not addressed in the original decision. (TR 23). On remand, the ALJ issued a "Notice of Amended Decision - Fully Favorable" on October 21, 2005, revising the disability onset date from January 1, 1978, to May 1, 2000, which also was the date the plaintiff filed his application which generated the favorable decision. (TR 17).  The ALJ provided no explanation for the change other than the 1978 date had been an "error."  Armed now with a May 1, 2000, date for the onset of disability, the ALJ turned his attention to one of plaintiff's prior denials and found that there would be no point in reopening the prior 1995 decision denying disability benefits.[2]

---

[1]As stated in the report and recommendation of March 19, 2008, understanding the background of this matter is complicated by the sparseness of the record, which is sometimes contradictory in its references to what has gone before.  Many of the underlying documents are not in the file, and the court is left with reviewing what others have said or done in response.

[2] The ALJ treated the remand as an order to reopen the 1995 claim for disability benefits, but there is nothing else in the record to support that interpretation of the remand.  A letter to the plaintiff explaining the
(continued...)

Alternatively, the ALJ stated that more than four years had elapsed since the initial determination on the September 20, 1995, application and the filing of the May 1, 2000 application; therefore, the 1995 application could not be reopened.[3]  The ALJ, however, did not address whether disability benefits were available pursuant to the 2000 application if the plaintiff's disability began in 1978 and he had an insured status through 1981. The court notes that there is no explanation in the amended decision as to why the ALJ addressed the 1995 application at all, as the matter was remanded by the Commissioner to address disability insurance benefits in connection with the 2000 application.

Following the receipt of the amended decision, on December 12, 2006, the Appeals Council denied Plaintiff's request for review of the October 21, 2005, ALJ decision, thus rendering the October 21, 2005, decision a "final decision" pursuant to 42 U.S.C. § 405(g). On February 21, 2007, Plaintiff filed a complaint, seeking judicial review of the final decision of the Commissioner.  Plaintiff alleges that the amended decision is not supported by substantial evidence, that it was an abuse of discretion to change the disability onset date, and that the change in disability onset date precluded plaintiff from receiving disability benefits retroactive to his original onset date of January 1, 1978.

### *GOVERNING LAW*

The Social Security Act provides for the payment of benefits to persons who have contributed to the program and "who suffer from a physical or mental disability." *Loza v.*

---

[2](...continued)
remand indicates that it is to look at the 2002 application and decision.  The record simply is not clear because it does not contain the remand order.  Indeed, most of the information pertinent to the motion is second-hand; that is, it is from references by others as to what has transpired rather than from the underlying documentation itself.

[3]  The record does not contain the initial determination for the 1995 application, so there is no evidence, other than the conclusion by the ALJ, that more than four years elapsed.

*Apfel*, 219 F.3d 378, 390 (5th Cir. 2000), *citing* 42 U.S.C. § 423(a)(1)(D)(1991).  As used in the Act, the term "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period not less than twelve months.  *Id.*, *citing* 42 U.S.C. § 423(d)(1)(A); *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1987).

To determine whether a disability exists for purposes of the Act, the Commissioner must weigh the following elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.  *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

In reviewing the Commissioner's decision to deny disability benefits, this Court is limited to a determination of whether the Commissioner's decision was supported by substantial evidence existing in the record as a whole and whether the Commissioner applied the proper legal standards.  *See, e.g., Harrell v. Brown*, 862 F.2d 472, 475 (5th Cir. 1988).  Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Id*.

In applying this "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision does exist, but the Court may not re-weigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for the Commissioner's even if the evidence preponderates against

the Commissioner's decision.  *Id.*  A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position.  *Id*.

However, the substantial evidence standard of review is not a mere rubber stamp for the Commissioner's decision, and it involves more than a search for evidence supporting the Commissioner's findings.  *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).  The Court must scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings.  *Id.*

At steps one through four of the five-step sequential analysis, the overall burden of proving disability under the Social Security Act rests on the claimant.  *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1985).

**The Parties' Arguments**

Essentially, the parties' arguments were set forth in plaintiff's brief in support of his complaint and the Commissioner's previously filed motion to dismiss, which was denied by the court.  The plaintiff argues that it was error for the ALJ not to consider the plaintiff's 2000 application for SSI benefits to be an application for DIB benefits, and to rule on the disability status of the plaintiff at the time of the original decision, as an application for SSI benefits is also considered to be an application for Title II benefits if an individual meets DIB insured status.

The plaintiff also contends that the ALJ's amended decision was an abuse of discretion, that the medical evidence established that plaintiff's disability onset date was January 1, 1978, and that the ALJ had a duty to fully develop the case given the fact that the plaintiff cannot read or write.  The plaintiff also argues that substantial evidence does

not exist to support the ALJ's determination that more than four years had elapsed between the 1995 determination and the 2000 application, as the appeal and evidence of the appeal from the 1995 application are not in the record.  The plaintiff argues that there is no evidence in the record documenting the 1995 application and any decisions thereon; therefore, the plaintiff cannot determine whether more than four years elapsed between the final decision on the 1995 application and the 2000 application.

The Commissioner argues that plaintiff's appeal of the 2005 amended decision is really a request to re-open the 1995 claim for disability benefits, and as such, it is a decision that is not subject to review by this court as the court lacks jurisdiction to hear the plaintiff's appeal in this case regarding the change in the date of onset of disability because the decision was "fully favorable."  According to the Commissioner, based on the ALJ's statement contained within the amended decision, plaintiff's case was remanded to the ALJ for a determination on whether to reopen a Title II application which plaintiff had filed in 1995 (TR 20). [4] The Commissioner then argues that other than the change in the onset of disability date from January 1, 1978, to May 1, 2000, the amended decision adopted the remainder of the favorable decision from the April 18, 2002, decision; therefore, the amended decision is still a fully favorable decision of the Commissioner.  That is, the change in the onset date was inconsequential as SSI benefits are not retroactive, but rather are payable only from date of filing, citing SSR 83-20, 1983 WL 31249, *1 (1983).

The Commissioner also argues that the court may not review the Commissioner's

---

[4] As stated previously, the administrative record does not reflect that the April 18, 2002, Decision was remanded to the ALJ for a determination of re-opening Plaintiff's 1995 Application; bur rather reflects, if anything, that the remand of the April 18, 2002, Decision was  for a determination of DIB benefits in addition to SSI when a person is already receiving SSI benefits.  (TR 22)The remand may indeed have been so restricted, but the order of remand is not in the record.

refusal to reopen the 1995 application for Title II DIB, because the court has no jurisdiction to review the Commissioner's refusal to reopen a final determination unless the plaintiff's challenge to the Commissioner's actions is on constitutional grounds, which is not the case in this matter.[5] .

### Discussion

Whether the ALJ's determination of onset of disability was legally correct and supported by substantial evidence is a justiciable case or controversy, as the onset date affected whether or not the plaintiff was potentially entitled to DIB.  That is, if the onset date were prior to termination of insured status in 1981,[6] the plaintiff might be entitled to DIB benefits for up to one year before  the 2000 application. *SSR 83-20, 1983 WL 31249* (1983).  A finding of disability onset after 1981 would not inure to the plaintiff's benefit, as his insured status ended in 1981.  Thus, the amended decision is not a "fully favorable" decision, and it is this decision plaintiff is appealing.  Also, while it is true that the court generally has no jurisdiction to review the Commissioner's refusal to reopen a prior application for benefits[7], it does have jurisdiction to review the final decision in the 2000

---

[5]*Defendant's Memorandum in Support of Motion to Dismiss* (rec. doc. 11), p. 3, citing, *inter alia*, *Califano v. Sanders*, 430 U.S. 99, 107-109, 97 S.Ct. 980, 985-986 (1977); *Torres v. Shalala*, 48 F.3d 887, 889-890 (5th Cir. 1987); *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997).

[6] The Amended Decision of October 21, 2005, states that the expiration of the plaintiff's insured status for Title II benefits was June 1981.  The original decision was silent as to the insured status date.

[7] Even assuming that the plaintiff's appeal centered on the reopening issue, which it does not according to the complaint, the record is lacking crucial pieces of information.  Insofar as reopening is concerned, the reasons cited by the Appeal's Council for remanding control our review.  *See, e.g. Cole v. Barnhart,* 288 F.3d 149 (5th Cir. 2002). The record is unclear as to the scope of the remand order or its precise contents.  The ALJ also stated that more than four years had passed, since the 1995 decision was final, making any reopening untimely, but again, the record contains only conclusory statements.  What this appeal has is basically a decision to reopen the 2002 decision and a decision not to reopen the 1995 decision.  Generally, it is a plaintiff who seeks to reopen; the rules are different when it is the Agency who seeks to
(continued...)

application based on whether there was substantial evidence to support the ALJ's decision to alter the date of the onset of disability in his amended determination and the Appeal Council's affirmation of that decision.  See *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In this case, that determination, if in error,  was not harmless, as it was the primary basis of the ALJ's decision not to reopen the 1995 application, since the issue  would be moot if the  revised disability onset date was May 1, 2000, and not January 1, 1978.  Moreover, the court is not persuaded that the change in the disability onset date was "inconsequential" as it affected plaintiff's entitlement or eligibility for disability insurance benefits since his insured status expired in 1981.

As stated above, the issue of plaintiff's entitlement to disability insurance benefits (as opposed to SSI)  was not addressed in the April 18, 2002, decision, nor was the last date of insured status mentioned, which is necessary in order to determine the availability and beginning date for receipt of disability benefits.[8] (TR 26) The onset date of plaintiff's disability is critical as it affects the period for which he may be paid for disability benefits, or even determinative of whether or not he is entitled to or eligible for any disability benefits. In Title II cases such as the issue before the court now, disability insurance benefits may be paid for as many as 12 months before the month an application is filed.  In this case,

_____

[7](...continued)
reopen.  The regulations on reopening are applied narrowly as against the Agency and liberally applied in favor of beneficiaries. *See, Wyatt v. Barnhart*, 349 F3d 983 (7th Cir. 2003.) Obviously, if the Agency could just reopen (or remand) any time it wanted and change disability onset dates, there would be no finality to decisions.

[8] The onset of disability must be prior to the last date of insured status. In Title II cases, disability insurance benefits (DIB) may be paid for as many as 12 months before the month an application is filed. However, in order for a Title II worker to be disabled under the Act, he must be under insured status at the time of the establishment of the disabling condition. Although important to the establishment of a period of disability and to the payment of benefits, the expiration of insured status is not itself a consideration in determining when disability first began.  *SSR 83-20, 1983 WL 31249* (1983).

plaintiff filed his latest application in May 2000; thus, the disability benefits at issue may extend back twelve months (May 1999).  SSR 83-20.  Also, a Title II plaintiff cannot be found disabled under the Act unless insured status is also met at the time when the evidence establishes the presence of a disabling condition.  This means that if the disability onset date is May 1, 2000, plaintiff would have had to have been in insured status on that date, but he was not, as his insured status expired in 1981.

However, it is the ALJ's role to establish the onset date of disability, and to do so, he must consider several relevant factors in establishing that date, including plaintiff's allegations, the work history, and the medical evidence.  However, the plaintiff's allegations as to the disability onset date is significant only if it is consistent with the severity of the condition(s) shown by the medical evidence.  SSR 83-20.  In the original decision, the ALJ found that "on January 1, 1978, the claimant was of advanced age."  (TR 32) Plaintiff was born in 1945, and would have been approximately 33 years old in 1978.  Clearly, plaintiff was therefore not of advanced age in 1978, and so the court must look to medical evidence to determine if the evidence is consistent with plaintiff's allegations regarding his impairments and his alleged disability onset date.

In this case, the medical evidence extends back only to May 24, 1999, and that evidence indicates that the plaintiff had "vague neck and shoulder pain" which was resolved.  (TR 108).  While the notes indicate that plaintiff was there for the "same old thing: back pain and shoulder pain," the diagnosis and prognosis did not address plaintiff's back pain at all.  The only impairment noted in that visit was plaintiff's hypertension.  Thus, the ALJ's decision to change the disability onset date to May 1, 2000, is supported by the medical evidence in the record.

As to plaintiff's arguments relating to the re-opening of the 1995 claim and the time lapse of possibly less than four years, a review of the record indicates that plaintiff filed a request for a hearing on his 1995 application on March 11, 1996. (TR 160). In order to file that request for hearing, an initial determination must have been made prior to March 11, 1996, and since plaintiff filed a new application on May 1, 2000, approximately four years and two months had elapsed between Mach 11, 1996, and May 1, 2000, which is outside the four-year allowed time frame for re-opening. Any attempt to reopen the 1995 application any later than approximately March 11, 2000, would have exceeded the scope of the authority given to the ALJ. *King v. Chater*, 90 F.3d 323, 325 (8th Cir. 1996). Thus, the ALJ was reviewing only his 2002 decision based on the 2000 application. The court is therefore unpersuaded by plaintiff's arguments regarding the reopening of the 1995 application.

The only remaining argument advanced by plaintiff is that the ALJ had a duty to fully develop the record because the plaintiff could not read or write. Except for that conclusory statement, plaintiff has failed to demonstrate that the ALJ did not fully develop the record. It is the plaintiff's burden to prove he is disabled, and by extension, to prove the date his disability began. Plaintiff was represented by Capital Area Legal Services before the administrative hearing, as evidenced by a letter from the SSA dated January 24, 2002 (TR 73). Thus, plaintiff had every opportunity to introduce medical evidence which established a disability onset date of January 1, 1978, but failed to do so. Thus, the court finds this argument devoid of merit.

## RECOMMENDATION

Accordingly, it is the recommendation of the magistrate judge that the decision of the Commissioner amending the disability onset date from January 1, 1978, to May 1, 2000, be **AFFIRMED** and  plaintiff's complaint be **DISMISSED** with prejudice.

Signed in Baton Rouge, Louisiana, on August 19, 2009.

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**JESSIE RILEY**                                                    **CIVIL ACTION**

**VERSUS**                                                           **NUMBER 07-115-JVP-DLD**

**MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY**

<u>NOTICE</u>

　　　　Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

　　　　In accordance with 28 U.S.C. §636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report.  A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

　　　**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

　　　　Signed in Baton Rouge, Louisiana, on August 19, 2009.

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**